*The probate of the paper propounded as the Will of* JAMES G. SMITH.

WHERE the witnesses to a will swore, on their direct-examination, to the contents of a printed deposition which set forth the observance of all the necessary legal formalities in the execution of a will, and on their cross-examination, on question and answer, swore that these formalities were not observed, probate was denied.

The witnesses not being professional men of the law, and not having consulted the statute, no presumption of the observance of the necessary formalities obtained.

R. H. UNDERHILL, *for Proponent.*
LODER & POMROY, *for Contestant.*

THE SURROGATE. There is a motion in this matter to open the evidence, and allow the proponents to put in additional proofs as to the formalities of execution.

The decedent, Smith, it appears, requested his family physician to draw up his will for him, the doctor having "deemed it his duty to tell him that he would never get well." The doctor received his instructions, "put them down in pencil," then wrote them out and brought to Mr. Smith, in his own handwriting, the paper now propounded as the will. The doctor also invited Mr. John G. Sperling to attend at Mr. Smith's house as a witness.

Dr. Ranney, on his direct examination, testifies as follows as to the execution of the alleged will: "The subscription of the name of said decedent to the instrument now shown to me, was made by the decedent, at the city of New York, in the presence of myself and

John G. Sperling, the other subscribing witness. At the time of making such subscription, the said decedent declared the said instrument, so subscribed by him, to be his last will and testament, and I thereupon signed my name as a witness at the end of such instrument, at the request of the said decedent, and in his presence." "I also saw said John G. Sperling, the other attesting witness, sign his name as a witness at the end of said will, and know that he did so at the request of said decedent, and in his presence."

And Sperling swears, on the direct, to the same identical signatures, declarations, publications, and requests, at the time of the execution of the alleged will.

Upon their cross-examination, however, these two witnesses not only overturn all their testimony as to the formalities of the execution, but concur in swearing positively to the omission of some of the most vitally important ones. Ranney says: "After I had read it" (the will), "he" (the testator) "said it was all correct, and then signed it; I am not positive about the exact words he used; this is all I recollect of the conversation had at the time of the execution of the will." Again, he says: "At the time of both the execution of the will and of the codicil, all that was said, to my recollection, on the part of the testator was, that his will and his codicil were correct." And Sperling says, on his cross-examination: "The will was then brought forward, the preparations were made, and Mr. Smith was moved, with the chair, up to the table, and signed the will; I then witnessed it; Mr. Smith said nothing about the contents of the will; I can't give his exact words, but the conversation, before the will was executed, was to the effect that that paper was his will; he said nothing when he signed it."

Brought to the test of the cross-examination, we here find that all proof of the formal publication of the paper as the last will and testament of the testator, and of a rogation by him to the witnesses to witness it as such,

vanishes away. The formal requisites to the execution of a will, by which the statute designed to make that execution differ from the signing and witnessing of an agreement, bill of sale or deed, are shown to have been omitted; for if they had been observed, the fact must have been remembered. But the inference is overwhelming that they were not observed; there was no professional man of the law present, nor had any been consulted as far as appears, in relation to the instrument; nor do we find that these persons, unskilled in the law, even consulted the statute, to see what the requisites might be. The cross-examination shows the proceeding to have been similar, in the contemplation of all present, to the execution of a deed.

Subsequently, at the like request of the decedent, Dr. Ranney also drew up a codicil to this will; and the same Mr. Sperling, together with Mr. Wm. Franklin Mott, were called in to witness it. These two witnesses swear, on their direct depositions, with absolute certainty, as to the observance of all the legal formalities; but, as before, they contradict themselves with equal positiveness when cross-examined. Sperling says, on cross-examination: ".He" (Smith) "did sign it; I saw him sign his name to this codicil; I don't think he made any remark in regard to the paper at all." And Mott, on his cross-examination, says: "He" (Smith) "signed the codicil; I saw him sign it; at the time he signed it I did not hear him say anything; after he had signed it, I signed it and then left." There could scarcely be a more complete proof that there was no publication or rogation at all.

The only question that could by any possibility be raised in this case, would be as to the relative weight of the direct and the cross-examination. There can be no legal doubt on that subject. The blank deposition, copies of which are kept in the Surrogate's office, was filled up by a clerk and presented to the witnesses, and this constituted the direct-examination. But the cross-examina-

tion was conducted by counsel, by question and answer, and the witnesses, deprived of the benefit of the leading and suggestive language of the printed deposition, manifested by their replies, the utter omission, or perhaps their equally fatal forgetfulness, of the publication and rogation.

The probate of the will and codicil denied.